## BROWN v. EMPIRE BRASS MFG. CO.

District Court, N. D. Ohio, E. D. June 16, 1926.

On Rehearing, February 6, 1928.

No. 1697.

connection between faucet ports and supply pipes is referred to as adjustable links, and in claims 2 and 3 as adjustable pipes, forming a swivel connection between the faucet ports and the supply pipes. The connection is S-shaped in form, with an inwardly screw-threaded collar on one end to engage the exteriorly screw-threaded end of the faucet port. It appears that plumbing installation for kitchen and laundries usually sets the hot and cold water supply pipe eight inches apart, or, in other words, on eight-inch centers, and for bathtubs on four-inch centers, and that variations to a greater or less extent in these distances are often, if not usually, found, owing to inaccuracies of installation. Whenever the installation thus varies, a problem of some difficulty is presented in connecting the faucet ports and the supply pipes, due to the fact that the supply pipes usually project through the back of a sink or other wall opening, and are so rigid that it is difficult to bend them into alignment with the faucet ports. To solve this difficulty and overcome this off-center relation, Brown provided adjustable connections between the two above described. In his preferred or specific form, adjustability is obtained over a range of several inches, thereby permitting a standard bath fixture with faucet ports four inches between centers to be applied to supply pipes eight inches between centers, as well as to permit adjustability over an entire range of variation between these extreme distances.

Brown's patent was litigated in this court in equity case 1365, Brown v. Sterling Brass Co., and its validity was sustained by my associate, Hon. John M. Killits. No written opinion was filed, but, as appears from an oral pronouncement at the end of the hearing, he was induced to this conclusion largely by the prima facie presumption of validity and the general acquiescence of the trade during a prolonged period. The present record is somewhat unusual. Neither party has introduced the prior art cited in the Patent Office, upon the basis of which all of Brown's claims were twice rejected for lack of patentable novelty, and upon which claim 2 was finally rejected and that rejection acquiesced in. It is also unusual in that all the prior art now introduced and relied on is new and original, and it was not presented either to the Patent Office or in the former trial.

Some of this new art is quite pertinent. Smith 409,607 shows the use of adjustable links or pipes to attach an ordinary water gauge to a steam boiler so that the connection may be readily adjusted to suit gauges of different lengths. McKee 866,952 discloses

Squire, Sanders & Dempsey, of Cleveland, Ohio, John C. Carpenter and Munday, Clarke & Carpenter, all of Chicago, Ill., for plaintiff.

Charles W. Hills and Charles W. Hills, Jr., both of Chicago, Ill., and William C. Keough, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This is the usual patent infringement suit. The bill charges infringement of all three claims of United States letters patent 1,181,370, issued to A. C. Brown May 2, 1916. Defendant relies also on the usual defenses of invalidity and noninfringement.

Brown's patent is for an adjustable faucet attachment such as are extensively used in kitchen sinks and laundry and bathtubs. It is designed to connect with hot and cold water supply pipes, and has a mixing chamber and a single spigot faucet. All the elements of his combination are old, except the adjustable connections between the faucet ports and the supply pipes; in fact, Brown admittedly took a well-known existing type of combination hot and cold water faucet attachment, and adapted thereto the adjustable elements of his invention. In claim 1, this

adjustable pipes with swivel connections used to connect gas header pipes with gas meters. Balbach 1,019,119 is another instance in which pipes or links are swivelly connected with gas header pipes to gas meters, thereby permitting the same to be adjustable. The patent states that this is the usual manner of making such connection. These links or pipes are curved or partly S-shaped, more or less like Brown's preferred form. Some of them have swivel connections. All of them are for the purpose of overcoming variations in distance between the centers of pipes or openings which it is desired to connect together to permit the flow of gas or of water. None of them, however, are in the particular branch of the industry in which Brown made his invention.

Weaver 1,010,469 is, however, in the same narrow art as Brown. Weaver has a somewhat different form of adjustment, and I think it is true, as stated by plaintiff's counsel, that either the supply pipes or the waste pipes must be moved to receive the attaching ends of the S-pipe, and hence does not embody Brown's specific invention, viz., adjustable pipes or links swivelly connected to faucet ports with supply pipes which extend through or project from a vertical wall. This last limitation is imposed in each of the three claims of Brown's patent. This difference is real, if not great.

While the question of patentability is not free from doubt, I am not persuaded that this new art compels a conclusion different from that reached by my associate. Brown's patent is presumed to be valid. The plumbing trade has undoubtedly acquiesced over a prolonged period in its validity. In a highly competitive field, the trade would not have readily acquiesced in the appropriation of that which was old and well known. Moreover, although there are three judges, there is only one District Court for the Northern District of Ohio, and the orderly administration of justice requires that a conclusion once reached should be adhered to, in the absence of convincing reasons to the contrary. In the present case, no reasons are perceived sufficiently cogent to require now a different conclusion on the question of validity.

The question of infringement is different from what it was in Brown v. Sterling Brass Co. The device there held to infringe was a Chinese copy. Defendant here does not use Brown's specific and preferred form of adjustable links or pipes. Defendant's faucet attachment is made with the faucet ports eight inches from center to center. It is usable only with supply pipes projecting through a vertical wall, installed on approximately eight-inch centers. It has an offset end on which the screw-threaded collar is placed, and, as a result of this offset or eccentric coupling, defendant has produced a swivel connection between the faucet port and supply pipe, having adjustability over a range of one-half to five-eights of an inch. This adjustability is sufficient to accommodate the usual variation due to errors or inaccuracies in installing supply pipes on eight-inch centers. Defendant contends that this connection is not an adjustable link or an adjustable pipe such as is disclosed by Brown, but is merely a direct coupling with a well-known eccentric nut at one end, performing in defendant's structure an old and well-known function, and hence does not infringe.

Here again the record in this case is somewhat unusual. Claim 2 of Brown was finally rejected on Speakman 1,036,022, and, although defendant in its answer sets up this patent as a part of the prior art, it has not seen fit to introduce it in evidence. Hence the precise ground upon which claim 2 was rejected is not made clearly to appear, and it is difficult to say what, if any, limitation is thereby imposed upon the remaining claims. Rejected claim 2 did not contain the limitation of supply pipes extending through or projecting from a vertical wall. It described the element in dispute as an adjustable swivel connection between each supply pipe and faucet port. The rejection, defendant contends, excludes from Brown's range of equivalents direct couplings, even if adjustable, and limits Brown to links or pipes such as are illustrated in the patent drawings and described in the specifications. Plaintiff in reply urges that claim 2 was rejected only because of the absence from it of the limitation to pipes extending from or projecting through a vertical wall. Plaintiff's contention seems to me rather the more probable of the two, and, upon the record as made, I think he is entitled to the benefit of the doubt. [4] The question of infringement is also exceedingly narrow. In the prior art I do not find any instance of an eccentric or offset head on any form of coupling or connecting pipe used to accomplish the function for which defendant is now using it. The nearest approximation thereto is Hardy 290,045. Hardy, however, is for a reducing pipe coupling; i. e., for coupling two pipes, one of which is of smaller diameter than the other, and having one inside of both pipes in a direct line and the entire offset on the other. There is a superficial similarity between the form of the two couplings, but the purpose

and function are quite different. I should not regard Hardy as anticipating defendant's device, nor as depriving defendant of patentable novelty over Hardy. Defendant's coupling is a pipe, if not a link. To call it a coupling rather than a pipe or link is to make a distinction without a difference. It has the element of adjustability over a narrow range. It obtains this adjustability by offsetting and enlarging one part of the coupling rather than by curving or bending. Defendant's purpose could be none other than to achieve adjustability, and it has done this by using an offset swivel connection instead of one curved or bent. It permits easy application of the combination faucets to hot and cold water supply pipes in the same manner and for the same purpose as taught and claimed by Brown when the off-center variation does not exceed one-half to five-eighths of an inch. To this extent, at least, it is an equivalent of Brown's adjustable link or pipe. In part, therefore, defendant has appropriated the substance of Brown's invention. Its structure is held to infringe all of the claims of the patent in suit. A decree in conformity to the views herein expressed will be entered. If desired, an accounting of profits and damages will be ordered.

### On Rehearing.

This cause has been heard and submitted on defendant's petition for rehearing. The case made by the bill is one charging infringement of United States letters patent 1,181,370 to A. C. Brown, May 2, 1916. After full hearing on the merits, I filed, June 16, 1926, an opinion holding all the claims of the patent valid and infringed. An interlocutory decree, with an order for accounting was entered in accordance therewith. on July 30, 1926. Defendant sued out an appeal August 4, 1926, and fully perfected said appeal and filed the printed record December 17, 1926. On May 12, 1927, before said appeal was argued, the defendant and appellant filed in the Circuit Court of Appeals its present petition for a rehearing. On July 15, 1927, that court made an order reciting that the application for a rehearing could be better considered and decided in the first instance by the District Court and, without expressing any opinion on any of the questions involved, remitted the same to this court for consideration and decision and for further proceedings, if the application be granted as if up to the time thereof no appeal had been perfected. Pursuant to the authority and power thus conferred, the proceedings on said application for rehearing were completed in this court and all questions fully and ably presented by counsel, both orally and in printed briefs.

In my opinion, a case is made which requires the granting of a rehearing. The rehearing is sought not because of any error of the District Court either as to fact or law in rendering the decree appealed from. It is sought solely upon the ground of newly discovered evidence. The affidavits and documentary exhibits set up clearly and fully the nature of this evidence. These affidavits show that the evidence is material; that it was not known until after the entry of the decree appealed from; that it could not have been discovered by the exercise of reasonable diligence; and that defendant or its counsel were not negligent in not discovering the same earlier. The time and the circumstances under which it was so discovered and brought to the knowledge of the defendant are fully set forth in the affidavits. Nor is the evidence cumulative.

The facts showing diligence prior to the entry of the decree and the time and circumstances of the discovery of the new evidence are fully set forth in the verified petition for rehearing and in the supporting affidavits of Charles E. Brock, defendant's counsel in charge of the litigation at the time the decree was rendered, and of defendant's new counsel, Charles W. Hills, employed in December, 1927. If the new evidence consisted in finding something new in the records and files of the Patent Office, I might be disposed to say that due diligence had not been shown, notwithstanding these affidavits show several searches to have been made. But the new evidence consists in prior uses at widely separated points in the United States and in trade catalogues and publications, or of manufacturers likewise doing business at widely separated places. A defendant in a patent case may well be expected to find all pertinent evidence preserved in the Patent Office record or files. It is the general repository of such evidence. If the field of industry is limited locally, or is confined to one or two practitioners, he might not be excused for having failed to have prosecuted inquiries in a field so limited. But here the industry covers the entire United States. Knowledge of it is not limited to a few outstanding manufacturers, but is within the files and memories of hundreds of manufacturers. Hence defendant's explanation is convincing that it was not able to bring to light the new and additional evidence until plaintiff, under cover of the decree entered herein, made a general attack upon the entire plumbing industs-

try. On the whole case, no more impressive showing could be made of diligence and of after-discovered evidence to be classified as new.

That the evidence is material cannot be disputed. That it is not cumulative is likewise beyond question. It is all directed to new art not heretofore brought forward.

The only remaining inquiry is whether it is reasonably sufficient to change the result already reached. Upon this point I deem it inadvisable now to express an opinion. Any observations upon this point now made might be misleading. Plaintiff has brought ten new suits upon the same patent, charging infringement by structures substantially similar to defendant's structure. Several of these new cases have been brought and are pending in this court. It is sufficient to say that the new evidence and the pertinency and materiality of the new art are so cogent that the interests of justice require that a rehearing should be granted and the validity of plaintiff's patent in this case should be again considered at the time or in connection with its reconsideration in the other pending cases.

Inasmuch as the rehearing is granted, not because the court doubts the correctness of the decree already entered, but in order that defendant may amend its answer and submit this additional proof, the decree heretofore entered will not be vacated and set aside, but will be permitted to stand—pending the rehearing. Orders in conformity to the views herein expressed will be entered.